NATIONAL PUMP CYLINDER CO. *v.* SIMMONS HARDWARE CO.[1]

*(Circuit Court. E. D. Missouri.   November 2, 1883.)*

1. PATENTS—EVIDENCE.
   Where, in a suit for the infringement of reissued letters patent, the defendant sets up as a defense that the reissued letters patent are broader than the original, and therefore invalid, and the plaintiff fails to introduce the original letters patent in evidence, the defendant may introduce them.

2. SAME—INQUIRY INTO VALIDITY OF REISSUED LETTERS PATENT.
   Where the original letters patent are so introduced, the question as to the validity of the reissued letters patent may be passed upon.

3. SAME—REISSUED LETTERS PATENT NO. 7,006, FOR "IMPROVEMENT IN PUMPS," VALID—PATENT CONSTRUED.
   Reissued letters patent No. 7,006, for an "improvement in pumps," are no broader than the original letters patent No. 90,143, issued for the same invention, and are valid.   They are for a metallic tube with vitreous coating internally, and with both ends flared so as to admit within it, from above and below, the wooden tubing with which it is designed to be connected.

4. SAME—INFRINGEMENT.
   The sale and use of enameled tubes with a *single* flare *held* no infringement.

In Equity.

Suit for an infringement of reissued letters patent No. 7,006, for an "improvement in pumps." The original letters patent are numbered 90,143. The "invention relates to certain novel improvements in wooden pumps, and consists—*First,* in constructing one of the sections or lengths of the pump-stock of metal, lined with a vitreous enamel, to present a smooth, durable surface to the pump-bucket or piston-packing, and adapted to receive within its ends the tapering ends of the wooden sections, and thus serve as a coupling for these sections, as will be hereinafter explained; *second,* in an annular-grooved ring-piston, which has confined within its groove a suitable packing, and which is constructed with an annular valve-seat on its upper side, adopted for a circular valve which moves freely upon a central valve stem."

The original letters patent contain two claims, viz.:

"(1) The metal-tube section, B, coated with a vitreous substance, and constructed with flaring ends, and receiving into said ends the lower terminus of the wooden section, A, and the upper terminus of the lower wooden section, B, all substantially as described.   (2) An annular-grooved ring-piston, D, constructed with a raised valve-seat, *v*, and a forked stem, *i, c*, in combination with valve, *g*, substantially as described."

1 Reported by Benj. F. Rex, Esq., of the St. Louis bar.

The claims in the reissued letters patent are as follows.

"(1) The metal section, B, lined with a vitreous substance, and formed so as to connect the wooden sections, A and C, by frictional contact, without the use of bolts, screws, or other fastening device, substantially as set forth. (2) The metal tube section or working band, B, coated with a vitreous substance and constructed with flaring ends, and receiving into said ends the lower terminus of the section, A, and the upper terminus of the lower section, B, all substantially as described. (3) An annular-grooved ring-piston, D, constructed with a raised valve-seat, *v*, and a forked stem, *i*, *c*, in combination with valve, *g*, substantially as described."

The other material facts are sufficiently stated in the opinion of the court.

*Taylor & Pollard*, for complainant.

*Herman & Reyburn* and *Parkinson & Parkinson*, for defendant.

TREAT, J. As counsel stated that this was a test case, it is to be regretted that all the facts and circumstances were not presented free from constantly recurring exceptions on technical points as to the admissibility of evidence. It is, or should be, the purpose of the parties to have the merits of the controversy settled. The first question is as to the validity of the reissued patent, on the ground that the same was an undue expansion of the original. Plaintiff objected that the original had not been introduced on its part, so that the question presented could not technically be considered. The court permitted, under objections, the original to be introduced. The reasons therefor were many; without enumerating all of which, one must suffice, viz.: that it was essential for the court to be informed exactly as to the nature and extent of plaintiff's demand, in order to determine which the original of the reissue had to be before the court. An examination of the original and the reissue shows that the latter is not invalid; for it is for the same invention. Plaintiff rests his demand upon the second claim of the reissue, viz.: "The metal tube section or working barrel, B, coated with a vitreous substance and constructed with flaring ends, and receiving into said ends the lower terminus of the section, A, and the upper terminus of the lower section, B, all substantially as described." Strange to say, the same error is in the original and the reissue, to which the attention of the court was not directed by counsel, viz.: that "the upper terminus of the lower section" (there being three sections, A, B, C, respectively) should have been named B instead of C.

Treating that false description as an obvious error, the court construes plaintiff's patent to be for a metallic tube, with vitreous coating internally, each end of which is flared, so as to admit within it, from above and below, the wooden tubing with which it was to be connected. Three sections are contemplated, the upper and lower of which are wooden, and the intermediate (the one in question) metallic. To avoid "the use of bolts, screws, or other fastening devices," and make the connections by "frictional contact" merely, as the patent claims, the flaring of the metallic tube at both ends became

the controlling factor.   There had been various contrivances before
the date of this patent, more or less complicated, some by screws
and some by drums or otherwise, to make the desired extensions and
connections in sectional pumps.   The merit of this patent, if any, was
in having the metallic tube described inserted with flaring ends be-
tween the upper and lower sections of wood tubing, whereby, without
bolts, screws, etc., the different sections would be connected by "fric-
tional contact" solely, and the metal tube become a water chamber, in
which the valved plunger could operate with attendant advantages.
Inasmuch as the patent for this tube in question is all that is claimed
it is evident that its construction is essential.   The patent in ques-
tion is not for a combination, and what is specified as to its use is
merely to indicate its adaptability to pumps, and to state its special
advantages therefor.   It must, therefore, be considered as designated;
its peculiar feature being its two flaring ends, whereby the advan-
tages named will be secured.   It is not purposed to go into details as
to the state of the art or prior patents, because it seems, in this as in
many other inventions, that persons previously groped their way
along the needed path, making and abandoning experiments, and
falling short of the hoped-for result, while, in the light of what a sub-
sequent inventor disclosed, it appears strange that they should not
have seen what now is so clear and simple.

The patent is held to be valid, and to be for the indicated tube
with flaring ends; that is, at each end.   Has defendant infringed?
The difficulty in the case arises under this head.   The evidence on the
main point is meager, viz. :   Did he sell tubes with the two-fold flares,
or only with one flare?   It seems that, following old contrivances,.
metal tubes with a flare at one end only are now in use, the upper end
of which is thrust into the wooden pump-stock instead of the reverse;
the other end flaring to receive the lower section of the pump where
needed.   Before the date of the original patent metal tubes or sec-
tions were used with converging flares, so as to pass within wooden
stocks reamed out for the purpose, thus forming a continuous pump
or tubing where length was required.   The difficulties and disadvan-
tages appearing, plaintiff's invention of a double and divergent flar-
ing, whereby, through frictional contact, a firm connection of the
parts can be made, and a proper water chamber had, is simple in its
terms.   Must it rest, then, on its precise terms, the double flare, or
be held to exclude all enameled tubes which have a flare at one end
alone, designed for either interior or exterior connection with wooden
pipes?   The special water chamber which results from plaintiff's
invention is a separate chamber between the upper and lower pipes,
necessarily larger than either of said pipes.   It may be that some
disadvantages would result if the plunger were to be repaired, because
the upper or pump stock would have to be detached therefor.   Under
the prior arrangements in metal-lined pumps, when no such enlarged
chamber was provided, the plunger worked freely, and could be easily

removed and repaired without detaching the upper from the second part. It seems that most of the cylinders sold by defendant followed the old and well-known plan, viz., the thrusting into a pump-stock of a metallic tube in which the plunger worked freely; said tube being the water chamber.

As to said tubes with the single flare, it is held there was no infringement, and that the sale and use of the indicated metallic tubes with the double flare, or flare at both ends, did infringe plaintiff's rights.

It will thus be seen that the plaintiff's patent is held to be solely for a metallic cylinder with vitreous lining, and diverging or outward flaring at both ends; and that, as there is evidence showing that some —a few, it may be—of such cylinders were bought and sold by the defendant, a decree against him must be entered, framed according to this opinion, with an accounting accordingly, to be referred to the master, unless an agreement with respect thereto is made by the parties.